647 P.2d 811

**Mrs. Shirley MIX, sometimes doing business as AD 1, Plaintiff-Appellant,**

v.

**GEM INVESTORS, INC., and Gem State Airlines, Inc., an Idaho corporation, Defendants-Respondents.**

**No. 14047.**

Court of Appeals of Idaho.

June 29, 1982.

Charles F. McDevitt of Givens, McDevitt, Pursley & Webb, Boise, for plaintiff-appellant.

Scott W. Reed, Coeur d'Alene, for defendants-respondents.

WALTERS, Chief Judge.

This appeal raises the issue of whether the sale of an airline is subject to the bulk transfer provisions of the Uniform Commercial Code, as adopted in Idaho. The district court held that it was not, and entered judgment dismissing the claim of Mrs. Mix (an unsecured creditor of the airline) as against the purchaser of the airline. We affirm.

The facts in this matter are not disputed. In 1975 Mrs. Mix, sometimes doing business as "Ad 1," contracted with Gem State Air-

lines Inc. to provide advertising and public relations services for the airline. This agreement lasted through September, 1978, at which time Gem State owed Mix some $15,000 for services rendered. In August of 1978, Gem Investors, Inc. was incorporated in Idaho for the purpose of purchasing the assets of Gem State Airlines, Inc. and in October, 1978, all assets of the airline were transferred to the newly formed investor group. Mix was never given notice of the sale transaction by either party. Subsequently, Mix demanded payment from Gem State for the amount owed her. Gem State refused to pay and Mix filed suit for $15,391.70, naming both Gem State and Gem Investors as defendants.

Mix relied on her agreement, as an independent contractor with Gem State, as the basis for her claim for recovery as an unsecured creditor under the bulk transfer provisions of I.C. § 28–6–101 through 6–111. The district court dismissed Gem Investors from the action, determining that, first, Gem Investors was not a party to the agreement between Mix and Gem State, and second, the sale of the airline's assets was not subject, as a matter of law, to Idaho's bulk transfer law. Mrs. Mix appeals, contending the district court erred in determining that the transfer was not subject to the bulk transfer provisions.

Idaho Code § 28–6–102(3) lists those enterprises subject to the bulk transfer provisions. It provides as follows:

> (3) The enterprises subject to this chapter are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell *and shall include, but shall not be limited to, the hotel, restaurant, barber shop, or beauty salon business, whether or not said business is the sale of merchandise from stock.* (Emphasis supplied.)

Idaho adopted the bulk transfer provisions of the Uniform Commercial Code in 1967. The language emphasized above was added as an Idaho amendment to the uniform law. There have been no changes in this Act since it was adopted.

The district court interpreted section 28–6–102(3) to exclude Gem State, an airline whose principal business was service-oriented, from those enterprises subject to the bulk transfer provisions. The court reasoned that the provisions were intended only to cover bulk transfers by (1) business enterprises whose principal business was the sale of merchandise from stock and (2) the specifically identified service-oriented enterprises, i.e., hotels, restaurants, barber shops, and beauty salons. The court found that the airline was a service-oriented enterprise; but because an airline is not specifically identified in I.C. § 28–6–102(3), the court held that it was not subject to the coverage of the bulk transfer provisions.

Mix argues on appeal that the district court interpreted I.C. § 28–6–102(3) too narrowly; that the legislature did not intend to limit the coverage of the bulk transfer provisions only to those service-oriented enterprises specifically identified therein. She urges that because the provisions of I.C. § 28–6–102(3) applies to identified service-oriented enterprises, the inclusion of the language "but shall not be limited to [them]," indicates a legislative intention that the Idaho law should cover *all* service-oriented enterprises.

Gem Investors argues that the intent of the legislature was otherwise when the amended uniform law was adopted. It urges that the coverage is limited to those service-oriented enterprises specifically identified and to other enterprises *similar* to them; that the words "but shall not be limited to" was not meant to expand coverage to *all* service-oriented enterprises. It argues that the language in question was meant to give some flexibility to the law so that similar enterprises such as motels, cafes, and other food service businesses would be covered.

With these arguments in mind, we turn our attention to a discussion of this statute. Principles of statutory interpretation require this court to ascertain and give effect to the legislative intent. *Gavica v. Hanson*, 101 Idaho 58, 608 P.2d 861 (1980). Legislative intent may be ascertained by

tracing the history of the pertinent legislation. *Sunset Memorial Gardens v. Idaho State Tax Commission*, 80 Idaho 206, 217, 327 P.2d 766, 772 (1958).

The original Idaho Bulk Sales Act dates from 1903. It applied only to the purchase, sale and transfer of "stocks of goods, wares and merchandise in bulk." Idaho Revised Code §§ 3332 through 3335. 1903 Sess. Laws, page 11, sections 1–4. The 1903 Bulk Sales Act was repealed and replaced in 1919. 1919 Sess.Laws ch. 110, p. 392; codified as I.C. §§ 64–701 through 705. The 1919 Act was expanded to cover not only merchants of goods, but also "hotel[s], restaurant[s], and barber shop[s] or any place of business wherein the furniture, fixtures, or equipment are used in carrying on said business, . . . ." This 1919 Bulk Sales Act was repealed by the legislature and replaced with the present bulk transfer provisions in Idaho's version of the uniform law now at issue. 1967 Idaho Sess.Laws ch. 161, p. 351. These provisions continue the prior specific coverage of hotels, restaurants, and barber shops, and extends coverage also to beauty salons.

■ The legislative purpose in enacting a statute is also a factor to be considered in statutory construction. *State v. Hoch*, 102 Idaho 351, 630 P.2d 143 (1981); *Jorstad v. City of Lewiston*, 93 Idaho 122, 456 P.2d 766 (1969). One purpose cited by our legislature in adopting the uniform law is "to make uniform the law among the various jurisdictions." I.C. § 28–1–102(2)(c). Although this purpose may appear at first blush to have been frustrated—at least in part—by the amendment in section 28–6–102(3), research indicates that several other states also amended their corresponding subsections of the uniform law before formal adoption.[1]

Each of these other states limits the coverage to certain specifically listed service-oriented enterprises.[2] Distinctive from these other states, only Idaho extends coverage—or apparently intends to extend coverage—beyond those businesses specifically identified, by inclusion of the six word phrase "but shall not be limited to."

■ In light of the legislative history, and the legislature's articulated purpose to seek uniformity with other jurisdictions in this area of the law, we believe Mix's interpretation of the amended coverage of I.C. § 28–6–102(3) is too broad. At the same time, we believe the coverage as interpreted by the court below is too narrow. We view the interpretation urged by Gem Investors to be reasonable and appropriate, in light of the legislative history, the legislative purpose, and common sense. We hold that the enterprises subject to the present bulk transfer law are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell, and shall include—whether or not their principal business is the sale of merchandise from stock—hotels, restaurants, barber shops, beauty salons and other service-oriented businesses similar to hotels, restaurants, barber shops and beauty salons.

■ The airline in the instant matter had little similarity to a hotel, restaurant, barber shop, or beauty salon. The assets of the enterprise, transferred in the sale to Gem Investors, included furniture and fixtures, research and market analysis, a covenant not to compete, public utility certificates, the trade name, logo design, and deposits. Apparently, the airplanes and other airline equipment were not owned but were leased.

---

**1.** *See, e.g.*, California Com.Code § 6102(3) (West 1964 & Supp.1982); Massachusetts Ann. Laws ch. 106, § 6–102(3) (Law.Coop.1976 & Supp.1982); Michigan Comp.Laws Ann. § 440.6102(3) (1969 & Supp.1982); Nevada Rev.Stat. § 104.6102(3) (1979); North Dakota Cent.Code § 41–06–02(3) (1968 & Supp.1981); Oregon Rev.Stat. § 76.1020(3) (1981); Washington Rev.Code Ann. § 62A.6–102(3) (1974 & Supp.1982).

**2.** The list is not the same, from state to state. An aggregate list of such enterprises includes hotels, gasoline service stations, laundry and dry cleaners, taverns, cocktail lounges, liquor stores, clubs, schools, hospitals, bakeries, restaurants, cafes, and other food dispensing establishments.

There was no stock of merchandise and no on-hand inventory of supplies belonging to this airline that creditors could faithfully depend upon for their extension of unsecured credit. We conclude the airline was not an enterprise which the bulk transfer provisions were meant to cover.

Should the legislature desire to extend coverage of the bulk transfer law to *all* service-oriented enterprise, a simple and clear amendment to I.C. § 28–6–102(3) could be enacted. However, we will not undertake that legislative function. The order dismissing the action against Gem Investors, Inc. is affirmed.

Costs to respondents. No attorney fees on appeal.

BURNETT and SWANSTROM, JJ., concur.