Filed 12/23/09          NO. 4-08-0484

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Calhoun County |
| RONALD D. FLAUGHER, | ) | No.90CF23 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Richard D. Greenlief, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

In October 1991, the trial court sentenced defendant, Ronald D. Flaugher, to two consecutive 15-year prison terms upon his convictions of two counts of attempt (first degree murder) (Ill. Rev. Stat. 1991, ch. 38, pars. 8-4(a), 9-1(a)(1)). The court stayed the execution of defendant's sentence until he was released from federal prison. After serving 17 years in federal custody, defendant filed a motion for a declaratory judgment, seeking a declaration that his Calhoun County sentences should run concurrently with his federal sentence, thereby entitling him to sentence credit for time served in federal prison.

In June 2008, the trial court granted defendant's motion, ordering defendant's two 15-year sentences for attempted first degree murder run concurrently with each other and with his federal sentence. The State appeals. We find the court (1) lacked jurisdiction to modify the two 15-year terms from mandatory consecutive to concurrent and (2) erred in ordering defendant's state sentence to run concurrently

with his federal sentence when the two were statutorily mandated to run consecutively. We vacate the court's judgment and remand with directions.

## I. BACKGROUND

On July 9, 1990, by information, the State charged defendant with two counts of attempt (first degree murder) (Ill. Rev. Stat. 1991, ch. 38, pars. 8-4(a), 9-1(a)(1)) for shooting his brother, Thomas Flaugher, and Thomas's then wife, Dorothy, with a shotgun on July 8, 1990. The shooting incident stemmed from a dispute regarding a land partnership between Thomas and defendant. Defendant was released on bond on July 10, 1990. On August 3, 1990, the State charged defendant with the same offenses by the issuance of superseding indictments.

On November 30, 1990, while released on bond, defendant was arrested by federal authorities and later charged in the Southern District of Illinois in case No. 92-2559 with (1) conspiracy to distribute five kilograms or more of cocaine, (2) using or carrying a firearm during and in relation to a drug-trafficking crime, and (3) possession of a firearm by a convicted felon. According to the statement of facts in the subsequent reported appellate decision (see United States v. Carson, 9 F.3d 576, 579-81 (7th Cir. 1993)), defendant and several other individuals were involved in the drug trade. In the spring of 1990, a confidential informant notified federal agents about the drug trafficking, which triggered a six-month investigation. Finally, on November 30, 1990, a controlled sale of cocaine was organized. Federal agents began surveillance and watched as the informant and the various individuals met at several different locations throughout the day exchanging drugs and cash. As for defendant's role, he provided

- 2 -

$50,000 to one of the buyers.  When all of the parties (except for defendant) arrived at the designated location, each was arrested.  Agents confiscated five kilograms of cocaine, and in some of the vehicles, the agents found loaded weapons.  Defendant was arrested a few hours later with $1,500 in his wallet and bundled cash totaling $5,000 in his truck.  On May 30, 1991, a jury convicted defendant on all counts.  On June 5, 1992, the federal court sentenced defendant to 235 months in prison.  He appealed, and his convictions and sentence were affirmed.  See Carson, 9 F.3d 592-93.

On August 5, 1991, after defendant was convicted on his federal charges but before he was sentenced thereon, a Calhoun County jury convicted him of two counts of attempt (first degree murder).  On October 2, 1991, defendant filed a posttrial motion, challenging the strength of the evidence, the admission of certain jury instructions, the State's closing argument, and several evidentiary rulings.  The trial court denied defendant's motion.

On October 4, 1991, the trial court sentenced defendant to two consecutive 15-year prison terms, finding specifically that Dorothy had been "severely injured."  The court further noted as follows:

"This [c]ourt is not taking into consideration the federal offense at all or what sentence they might hand down.  That has nothing to do--it doesn't relate to this proceeding at all.  This is a totally separate proceedings [sic] in the Circuit Court of Calhoun County.  What happens in the Federal Court is a total other ball[]game."

After sentencing, defendant was remanded to the custody of the federal marshal.

On October 11, 1991, the trial court entered the sentencing judgment, which stated as follows: "Mittimus is stayed until defendant is released from custody of the United States Department of Justice." Defendant appealed. On August 13, 1992, this court affirmed defendant's convictions and sentences. See People v. Flaugher, 232 Ill. App. 3d 864, 598 N.E.2d 391 (1992).

On September 7, 1993, defendant filed his first pro se postconviction petition, alleging, inter alia, that the trial court erred by imposing consecutive prison terms because the evidence at trial did not reveal that either victim suffered severe bodily injury justifying consecutive terms. The court appointed counsel to represent defendant and, after a hearing, "dismissed" the petition. Defendant timely appealed the court's order. This court affirmed the dismissal. See People v. Flaugher, No. 4-94-0652 (September 15, 1995) (unpublished order under Supreme Court Rule 23).

On March 12, 1997, defendant filed his second pro se postconviction petition, alleging, inter alia, the ineffective assistance of trial, postconviction, and appellate counsel. On June 7, 1997, the trial court dismissed defendant's petition as frivolous and patently without merit.

On June 22, 2005, defendant filed his third pro se postconviction petition, alleging the trial court had failed to present the issue of whether the victims suffered great bodily harm to a jury for consideration before imposing consecutive prison terms on those grounds. He claimed his sentencing judgment was void. On January 12, 2007, the court summarily dismissed defendant's petition, finding that the law set forth in

Apprendi v. New Jersey, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000) (any factor used as a reason to increase a sentence must be submitted to a jury and proved beyond a reasonable doubt) could not be applied retroactively. Defendant appealed, filing a motion for remand, for the appointment of counsel and for further proceedings. This court allowed the motion and dismissed the appeal. See People v. Flaugher, No. 4-07-0154 (May 25, 2007) (appeal dismissed on appellant's motion).

On April 24, 2008, defendant, through counsel, filed a motion for declaratory judgment (the subject of this appeal), claiming that, at the time he was sentenced in this matter to two consecutive 15-year prison terms, he had not yet been sentenced on his pending federal charges. The sentencing court had stayed the execution of the sentencing judgment until defendant was released from federal custody. Citing People v. McNeal, 301 Ill. App. 3d 889, 891, 704 N.E.2d 793, 795 (1998) ("a sentence may not be ordered to run consecutively with a sentence not yet imposed"), defendant argued that the court was prohibited from ordering that his consecutive state terms would run consecutive to his federal sentence--a sentence that had not yet been imposed at the time he was sentenced in state court. Without citing statutory authority, defendant sought a declaratory judgment that his state sentences were to run concurrently to his federal sentence.

On June 12, 2008, defendant was released from federal prison, and five days later, the trial court conducted a hearing on defendant's motion for declaratory judgment. In his opening statement, defendant's counsel claimed this motion was one

seeking clarification "as to the sentence that was imposed against [defendant] back on October 4th of 1991." He argued that the sentencing stay effectively ordered defendant's sentences to run consecutively to his federal sentence, an impermissible result when he had not yet been sentenced on his pending federal conviction. See McNeal, 301 Ill. App. 3d at 891, 704 N.E.2d at 795.

The State did not object to the trial court's subject-matter jurisdiction. Instead, the State claimed defendant should now begin serving his consecutive 15-year prison terms as he had been released from federal prison into state custody.

Defendant presented the testimony of Wynona Hughes (his sister), Edward Flaugher (his nephew), Henry Flaugher (his brother), Curtis Flaugher (his son), Donna Flaugher (his wife), and defendant himself. They testified that defendant was not a threat to society, not at risk of committing any further crimes, and had served his federal sentence without incident. Defendant accepted responsibility and testified that he regretted shooting Thomas and Dorothy. Each witness blamed Thomas for the deterioration of the relationship between defendant and him, which had escalated into the shooting incident.

The State presented no evidence. During his closing argument, defendant's attorney argued that "17 years for what he has done is more than enough." Counsel asked the trial court to "direct these sentences be concurrent with the federal sentence, accordingly." On the other hand, the prosecutor argued that the sentencing court specifically found that it was not considering the federal offense at all as a factor in imposing consecutive sentences. Rather, the prosecutor argued, the court imposed the

consecutive terms after specifically finding that the nature of the victim's injuries warranted such terms. The prosecutor asked for a continuance of the hearing for an opportunity to present the testimony of the victims. The court granted the State's request for a continuance.

On June 24, 2008, the continued hearing resumed. The State called Thomas Flaugher. He referred to defendant as his "ex-brother" and testified that he still feared defendant even though he has had no contact with him or his family in 15 years. Defendant had also shot at Thomas approximately a month and a half before the incident that resulted in the criminal charges. He said he "continue[d] to express concern about [defendant's] release." He said defendant had not contacted him to express his remorse or to apologize.

On cross-examination, defendant's counsel had Thomas read portions from the trial transcript where, during his testimony, Thomas admitted that he had threatened to kill defendant and had slapped Curtis, defendant's son, prior to the shooting incident. Thomas testified that, as a result of the shooting, he suffered a pellet wound on his arm, which did not require surgery.

Dorothy Flaugher testified that defendant shot her in the head, arm, hand, and chest with shotgun pellets, causing injuries requiring hospitalization. She said she was still afraid for her personal safety. She testified that, after the shooting, Curtis had exhibited threatening behavior toward her, such as following her extremely closely in his vehicle and shooting toward her house. Defendant had not apologized to her either.

In rebuttal, defendant called Curtis Flaugher, who denied following or

stalking Dorothy or firing a weapon toward her home. He said prior to the shooting incident, Thomas had assaulted him twice--once by pulling him off of his four wheeler and another time by striking him in the face. He was 16 years old at the time.

Donna Flaugher testified in rebuttal that the shooting incident stemmed from Thomas's violence toward Curtis, the sale of certain personal property, and the named owners of certain real property. She said these circumstances no longer exist; and therefore, defendant would not be a threat to the victims.

Defendant testified that prior to the incident, he and Thomas did not have any personal problems with each other and had never been physically violent toward each other. He said he is no longer a threat to Thomas or Dorothy. He testified that he was currently 62 years old. He received an additional three years on his federal sentence as a result of the Calhoun County convictions. He was expected to serve an additional 10 years of supervised release. If he were released from state custody, he would secure employment and comply with all restrictions of his federal supervised release. He asked the trial court for a chance to "become a viable citizen and a husband and father," stating as follows: "Whenever this ended, whenever the altercation finally come [sic] to a head, I was mentally and physically, I was destroyed, and I'm sorry I did it, and I couldn't help it. I wasn't mentally right."

Upon questioning by the trial court, defendant testified that he "will never do--[he] will never be involved in anything illegal in [his] life again, ever." He again expressed his remorse for the incident.

After considering the testimony and arguments of counsel, the trial court

noted, and the parties agreed, that section 5-8-4(b) of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-4(b)) ("The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record") governed the decision. In announcing its decision, the court found as follows:

"Now, having said that, said all of that, we are now 17 years later, 17 years where it's undoubtedly you have been sitting in a federal cell during that time. I have to weigh and measure what you told me on the witness stand I should believe that the public should believe *** that they're safe and will remain safe in the course of this.

What I look to in the process of making that determination today, as compared to 17 years ago, is that, in fact, you went into the federal system and you not only sat in a cell, but you also had no problems, other than the one incident that was, that you testified to, the one incident while in custody.

You sought education, got education in the process of doing that. You kept contact with your family, and I'm going

to address that here in just a very brief moment.

***

How it would have appeared from the public perspective, my perspective, had you taken the time, whether it be one year, five years, 10 years down the road, 15 years down the road to have just written one line and addressed a letter to each of your brother and your ex-sister-in-law and said [']I'm sorry.[']

* * *

*** [T]he thing that probably affects me as much as anything is the fact that there's a lady sitting behind you who for 17 years, 17 years, has believed in you, has believed that there is the right character factors in you that when everything else is revealed, spread apart, that you won't do this again, that the two of you can have a meaningful life.

I believe she is sincere, and I believe that she is not diluting [sic] herself, and in large part[,] I base the decision that I am going--about to tell you about, and I think you can see what it is, on that.

***

Mr. Flaugher, if I'm wrong, it will weigh heavy on me. It truly will because I take my job seriously here. And it will

weigh heavy in the sense that I have misread. I have mis-read, and that's something that I try very hard [not] to do, and I misread you, and I misread the things that are going on around you at this point in time.

So, for the reasons stated, I find that under the statute this should be a concurrent sentence, that you should receive credit for the time served in the Federal Department of Cor-rections, that you will be committed to the Illinois Depart-ment of Corrections so that they can administratively pro-cess you in and then, in turn, if they--as they find their credit, apply the credit that the court has directed, that you should in turn be released on the three[-]year mandatory supervised release.

You are not going free today, but it's my belief that that will take place shortly."

The court indicated that defendant would receive credit for time spent in federal custody beginning May 30, 1991.

On June 24, 2008, the trial court entered a written order finding as follows:

"Cause coming on for hearing on defendant[']s mo-tion to re[]consider sentence herein. Evidence presented. Court finds said sentence should [run] concurrent with

federal sentence heretofore entered.  Court finds further protection of the public is <u>not</u> necessary and defendant poses no threat to safety of other persons.

That credit should be granted for time served in federal prison and defendant should be remanded to Ill[inois] Dep[artment] of Corrections for computation of good time since May 30, 1991, mittimus to issue, until June 12, 2008[,] through June 24, 2008[,] as corrected."  (Emphasis in original.)

On June 24, 2008, an amended sentencing judgment was entered indicating that defendant had been sentenced to two 15-year prison terms to be served concurrently to each other and to defendant's federal sentence.  This appeal followed.

## II.  ANALYSIS

The primary issue presented in this appeal is whether the trial court had jurisdiction in 2008 to reconsider the sentence imposed upon defendant in 1991.  The State first argues that the court did <u>not</u> have jurisdiction because defendant's motion was untimely, and therefore, the June 2008 amended sentencing judgment is void.  A trial court normally loses subject-matter jurisdiction 30 days after a sentence is imposed.  <u>People v. Flowers</u>, 208 Ill. 2d 291, 303, 802 N.E.2d 1174, 1181 (2003).  However, pursuant to section 5-8-1(f) of the Unified Code (730 ILCS 5/5-8-1(f) (West 2006)), a section which specifically addresses the issue presented, the court was revested with subject-matter jurisdiction and the authority to reconsider defendant's

1991 sentence.

Section 5-8-1(f) of the Unified Code (730 ILCS 5/5-8-1(f) (West 2006)) provides as follows:

"A defendant who has a previous and unexpired sentence of imprisonment imposed by an Illinois circuit court for a crime in this [s]tate and who is subsequently sentenced to a term of imprisonment by another state or by any district court of the United States and who has served a term of imprisonment imposed by the other state or district court of the United States, and must return to serve the unexpired prior sentence imposed by the Illinois [c]ircuit [c]ourt may apply to the court which imposed sentence to have his sentence reduced.

The circuit court may order that any time served on the sentence imposed by the other state or district court of the United States be credited on his Illinois sentence. Such application for reduction of a sentence under this subsection (f) shall be made within 30 days after the defendant has completed the sentence imposed by the other state or district court of the United States."

In People v. Bainter, 126 Ill. 2d 292, 296, 533 N.E.2d 1066, 1067 (1989), the supreme court addressed the issue of whether the legislature violated the

separation-of-powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1) by enacting subsection (f)--a section which appears to revest the trial courts with jurisdiction over otherwise final judgments. The court held that the section was constitutional and did not violate separation of powers. Bainter, 126 Ill. 2d at 305, 533 N.E.2d at 1071. The legislature properly exercised its authority in enacting subsection (f). According to the court, the legislature realized that "special circumstances may arise in which the interests of finality are lessened and the circuit court should be revested with jurisdiction over a previously determined matter. The subsequent imposition of a sentence in another jurisdiction is the type of circumstance that may warrant the expansion of the circuit court's jurisdiction." Bainter, 126 Ill. 2d at 305, 533 N.E.2d at 1071.

Such is the case here. The subsequent imposition of defendant's federal sentence was a "special circumstance" that allowed the trial court to regain jurisdiction over the sentence imposed 17 years earlier. Pursuant to the relevant statute, defendant had 30 days after he completed his federal sentence to seek the relief he requested in state court. See 730 ILCS 5/5-8-1(f) (West 2006). Defendant filed his motion two months prior to his release, and the court began conducting the hearing five days after his release. The court entered its order within 30 days of defendant's release from federal prison. We find his motion was timely and note that the State never raised a timeliness issue.

Despite the fact that neither defendant's motion, nor the trial court's ruling on the motion, relied on section 5-8-1(f) (730 ILCS 5/5-8-1(f) (West 2006)), we nevertheless hold that the court had the proper authority to consider the matter. The

court allowed defendant to receive credit on his Illinois sentence for time served in federal prison--the exact remedy contemplated in section 5-8-1(f). See 730 ILCS 5/5-8-1(f) (West 2006).

According to the Unified Code, a defendant has two opportunities to seek the relief he requested, that of having the trial court review a state-court sentence upon the subsequent imposition of a foreign sentence. See 730 ILCS 5/5-8-4(a), 5-8-1(f) (West 2006); see also Bainter, 126 Ill. 2d at 299-305, 533 N.E.2d at 1068-71. Section 5-8-4(a) allows a trial court to order that an Illinois sentence run concurrently with a subsequently imposed foreign sentence if the defendant applies for such relief within 30 days after the defendant's foreign sentence is finalized. 730 ILCS 5/5-8-4(a) (West 2006). However, section 5-8-1(f), as previously stated, allows a trial court to award credit on an Illinois sentence for time served in a foreign penitentiary if the defendant applies for such relief within 30 days after he has completed his foreign sentence. 730 ILCS 5/5-8-1(f) (West 2006). Based solely on the timing of defendant's motion in this case, we find the trial court proceeded under section 5-8-1(f), rather than section 5-8-4(a), and properly considered the matter presented.

> "When a term of imprisonment is imposed on a defendant by an Illinois circuit court and the defendant is subsequently sentenced to a term of imprisonment by another state or by a district court of the United States, the Illinois circuit court which imposed the sentence may order that the Illinois sentence be made concurrent with the sentence imposed by

the other state or district court of the United States. The defendant must apply to the circuit court within 30 days after the defendant's sentence imposed by the other state or district of the United States is finalized." 730 ILCS 5/5-8-4(a) (West 2006).

We find the trial court had the statutory authority pursuant to section 5-8-1(f) of the Unified Code (730 ILCS 5/5-8-1(f) (West 2006)) to consider whether defendant should receive credit for time served in federal prison against his state-imposed sentence. However, we find no authority in the Unified Code that would allow the court to modify defendant's Illinois sentence as imposed, from two consecutive 15-year prison terms to two concurrent 15-year prison terms. The authority to "reduce" a defendant's sentence as set forth in section 5-8-1(f) refers only to the court's discretion of allowing a defendant to receive credit for time spent incarcerated in a foreign prison. See 730 ILCS 5/5-8-1(f) (West 2006). Neither this section, nor any other section in the Unified Code, authorizes a court to reduce the state sentence itself, beyond 30 days from the date the sentence was imposed. See 730 ILCS 5/5-8-1(c) (West 2006) (the court may reduce a sentence upon a defendant's motion filed within 30 days of the imposition of the sentence).

Because Judge Pezman made a finding that defendant's conduct resulted in great bodily harm, defendant's two sentences were required to run consecutive to each other. In October 1991, the sentencing court ordered defendant's two state sentences to run consecutively to each other due to the severe bodily injury suffered by

Dorothy.  See Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-4(a).  That sentencing judgment was not amended within 30 days of its entry, and it remains in force today.  Therefore, we find that the court erred in ordering defendant's two consecutive 15-year prison terms for attempt (first degree murder) to run concurrently with each other.  The court lacked the jurisdiction to enter that order.

Moreover, while the trial court did have jurisdiction to consider whether defendant should be given credit on his Calhoun County sentences for time served in federal prison, the State claims that the court was without discretion to reconsider the sentence in such a manner because section 5-8-4(h) of the Unified Code (730 ILCS 5/5-8-4(h) (West 2006) mandated that the three sentences (state and federal) be imposed to run consecutively.

Subsection (h) provides as follows:

"If a person charged with a felony commits a separate felony while on pre[]trial release or in pretrial detention in a county jail facility or county detention facility, the sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered."  730 ILCS 5/5-8-4(h) (West 2006).

As the State admits, no published decisions apply to the mandatory-consecutive-sentencing provision of section 5-8-4(h) to federal felonies committed while on pretrial release on a state charge.  However, we note that the supreme court has

applied the provisions of section 5-8-4(h) when a subsequent felony was committed in another state. See People v. Clark, 183 Ill. 2d 261, 266, 700 N.E.2d 1039, 1042 (1998) (trial court lacked authority to sentence the defendant to the agreed-upon six-year prison term as a concurrent sentence when he committed a felony in the State of Missouri while on pretrial release).

Defendant claims section 5-8-4(h) (730 ILCS 5/5-8-4(h) (West 2006)) "is not applicable because nothing in the record supports the fact that the [d]efendant committed an offense while on bond as well as the fact the federal charges fall under federal sentencing guidelines." According to Carson, 9 F.3d at 580-81 (the Seventh Circuit's opinion from defendant's federal case), defendant committed the federal felonies while on pretrial release in the case sub judice. Further, defendant provides no authority for the second part of his argument that the statute does not apply because federal sentencing guidelines apply.

The law is clear that sentences that are statutorily mandated to run consecutively are void if they have been ordered to run concurrently. Indeed, this court recently noted as follows:

"Where sentences are mandatorily consecutive and the defendant is sentenced to concurrent sentences, the sentences are void and the remedy is to remand for imposition of consecutive sentences. [Citation.] When a trial court's decision to impose concurrent prison terms is deemed void, the appellate court has the authority to correct the

sentence and the appellate court is not barred from doing so by supreme court rules limiting the State's right to appeal or prohibiting the appellate court from increasing a defendant's sentence. [Citation.] Thus, we can, if we so desire, remand simply for the trial court to amend its sentencing order to make sentences already given consecutive. [Citation.]"

People v. Davison, 378 Ill. App. 3d 1010, 1018, 883 N.E.2d 648, 655 (2008), rev'd on other ground, 233 Ill. 2d 30, 906 N.E.2d 545 (2009).

See also People v. Arna, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995).

Defendant was released on bond on the current charges on July 10, 1990. He was arrested for federal charges on November 30, 1990, as a result of a drug-trafficking sting operation. The federal authorities witnessed defendant participating in the operation on the day of his arrest. Defendant committed the separate federal felony while on pretrial release on his state court charges. The chronological order of the entry of the convictions and respective sentences is of no consequence to the applicability of section 5-8-4(h). See People v. Williams, 184 Ill. App. 3d 1094, 1096, 540 N.E.2d 832, 833 (1989).

Pursuant to the plain language of section 5-8-4(h) of the Unified Code (730 ILCS 5/5-8-4(h) (West 2006)), defendant was subject to mandatory consecutive sentences. In relying on section 5-8-4(b) (finding protection of public is not necessary and defendant poses no threat to safety of other persons) to find defendant's sentences

should run concurrently to each other and concurrently to the federal sentence, the trial court erred, because this provision only applies to nonmandatory consecutive situations. Public safety or other factors are not considered where the statute mandates imposition of consecutive sentences. Because Judge Pezman made a finding of great bodily harm, consecutive sentences were mandated on the state charges. Because defendant was on pretrial release when he committed the federal charge, consecutive sentencing was mandated for that offense also. Thus section 5-8-4(b) had no application here. We vacate the trial court's amended sentencing judgment and remand for the entry of an amended judgment, making the state sentences consecutive to each other and consecutive to his federal sentence, with no credit for time served in federal custody.

## III. CONCLUSION

For the foregoing reasons, we vacate the trial court's June 24, 2008, amended sentencing judgment and remand for the entry of an amended judgment in accordance with our decision set forth above.

Order vacated and remanded with directions.

POPE, J., concurs.

MYERSCOUGH, P.J., dissents.

PRESIDING JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent even though this defendant committed heinous crimes. The trial court here correctly applied the law even in the face of a maze of confusing sentencing statutes. I would affirm the trial court on any number of grounds. The trial court lacked jurisdiction to increase defendant's sentence for committing a felony while on bond because the original judge stayed the mittimus, that is, sentencing judgment, for 17 years, rendering the order void and causing the court to lose jurisdiction to enforce it. Alternatively, the trial court did not, as the majority maintains, make the state consecutive sentences concurrent to each other, although the court did have the authority to reduce those sentences. Further, the court properly granted defendant credit for time served on the federal sentence.

## I. STAYING THE SENTENCING JUDGMENT FOR 17 YEARS RENDERED THE ORDER VOID

The October 11, 1991, sentencing order, which was stayed for 17 years, is void. The original trial judge, Alfred Pezman, should not have stayed the written sentencing judgment for 17 years. Judge Pezman should have entered judgment and issued a warrant requiring the federal authorities to turn defendant over to the Illinois authorities upon completion of his sentence. The court lacked the authority to suspend the judgment indefinitely:

"The effective administration of the criminal law requires that one who pleads guilty or is convicted of a violation of the law shall be promptly and certainly punished, and no court has authority to suspend sentence indefinitely in

- 21 -

such a case. It is the duty of the court to pronounce judg-

ment at the term at which the conviction is had, unless upon

a motion for a new trial, in arrest of judgment[,] or for other

cause the case is continued for further adjudication, and the

defendant, by recognizance or being held in custody, is still

required to answer the charge. If sentence is indefinitely

suspended[,] the court loses jurisdiction, and a judgment

subsequently entered is void. (People [ex rel. Smith] v.

Allen, 155 Ill. 61[, 65, 39 N.E. 568, 569 (1895)]; People [ex

rel. Boenert] v. Barrett, 202 [Ill.] 287[, 298, 67 N.E. 23, 27

(1903)].) The court, by reserving judgment for an indefinite

period as to the seven counts, lost jurisdiction as to them,

but the mittimus was issued upon the judgment properly

entered as to the first five counts[,] and the court did not lose

jurisdiction by any postponement of sentence." People ex

rel. Fensky v. Leinecke, 290 Ill. 560, 562-63, 125 N.E. 513,

514 (1919).

See also People v. Schallman, 295 Ill. 560, 568, 129 N.E. 569, 572 (1920) ("It is the rule

that if the issuance of the mittimus is suspended for an unreasonable length of time[,]

the court loses jurisdiction to enforce it"). The stay of the sentencing judgment is what

the majority relies upon to assume jurisdiction to impose the mandatorily consecutive

state sentences to the federal sentence. Only section 5-8-1(f) of the Unified Code affords

- 22 -

the trial court here with jurisdiction. The trial court had authority to reduce defendant's state court sentences within 30 days of completion of the federal sentence or order his Illinois sentence to run concurrently to his just-completed federal court sentence within 30 days of completion of the federal sentence. That is a very limited jurisdiction and not authority to resentence defendant to a mandatorily consecutive sentence which has never been imposed--or even considered--by the original sentencing judge, the judge at the section 5-8-4(h) reconsideration hearing, or the attorneys at the hearing and even on appeal.

## II. ALTERNATIVELY, THE TRIAL COURT DID NOT CHANGE THE STATE CONSEC-UTIVE SENTENCES TO CONCURRENT SENTENCES AND PROPERLY GRANTED DEFENDANT CREDIT FOR TIME SERVED ON THE FEDERAL SENTENCE

### A. Trial Court Did Not Make the State Sentences Concurrent to Each Other

The majority and the State erroneously assert the trial court made the two state court sentences concurrent to each other. Defendant's motion for declaratory judgment asked only that "the State charges run concurrent[ly] with any sentence imposed in the [f]ederal charges." Defendant does not argue on appeal for the two state court sentences to run concurrently to each, nor does the record support such a finding. Judge Greenlief's handwritten order and the docket entry therefor both order the complete consecutive state sentence to run concurrently with the federal. The hand-written order provided:

"Cause coming on for hearing on defendant's motion
to re[]consider sentence herein. Evidence presented. Court
finds said sentence should [run] concurrent[ly] with [f]eder-

- 23 -

al sentence heretofore entered.  Court finds further protection of the public is <u>not</u> necessary [and] defendant poses no threat to safety of other persons."  (Emphasis in original.)

The docket entry provided:

"Dft. present with counsel.  [H]earing on Mtn to Reconsider the Sentence held. [E]vidence presented.  Order finding sentence should run concurrent[ly] with [f]ederal [s]entence.  [F]inds protection of public is not necessary.  Dft. poses no threat to safety of others.  [C]redit granted for time served in [f]ederal [p]rison.  Dft. remanded to Il. Dept. of Corrections for computation of good time since May 30, 1991[,] until June 12, 2008[,] through June 24, 2008[,] as corrected with [m]ittimus to issue."

The transcript similarly reflects the judge's action and intention to sentence defendant to his original consecutive state sentences.

Neither did the parties argue to Judge Greenlief that the state consecutive sentences should be concurrent to each other.

"MR. BURCH [(prosecutor)]: Please the court, as we indicated, it would be our belief that the seriousness of the two offenses happened, the fact that they involve two victims, then that the gravity of the injuries sustained by the parties hereto, necessitate under that statute that the sen-

tences be consecutive, and we believe that the defendant has not served any of the time of these--either of these sentences at the present time.

We don't believe he has ever been in our custody to serve one day on any of these charge[s]. It's not just an issue that Judge Pezman specifically did not know anything about his federal sentence. It didn't exist. There was no federal sentence that he was considering.

There was no federal sentence he was staying. There was nothing he did that had--that he had any authority to do, other than issue his mittimus, which he did, and he said in the sentencing that the sentence must, by statute, be consecutive due to the nature of the injuries and the nature of the offense, the type of crimes.

THE COURT: These two together?

MR. BURCH: Correct.

THE COURT: The two attempted murders together must be consecutive?

MR. BURCH: Correct, which is all he had before him. There was nothing else, and now we come back 17 years later. We could have been here five years ago, we could have been here 10 years ago, we could have been here 13 years

ago.  We didn't know when we would be here.  We had no way of knowing when we would be here.

But, the fact remains that all those federal years that Mr. Flaugher got he got for a completely unrelated crime in an unrelated jurisdiction in an unrelated incident, and he wants us to give him credit and ignore what happened in Calhoun County?  Is the court giving no efficacy to the fact that two people's lives were severely impacted by the criminal conduct of this defendant?

Defendant never has answered for that if he does not do any time in the state court.  For that reason[,] we ask the court to apply justice and apply law, and the fact that I think the victims have indicated they still continue to fear for their lives and their safety that the sentences still need to be served in the [S]tate of Illinois.

THE COURT: Mr. Fanning, I will ask you, and I will give you the opportunity to further argue, but in the same respect, I will ask you, in the process, that you address the question that I just posed to Mr. Burch.

MR. FANNING: Your Honor, that's correct.  I don't write the statutes.  I must comply and stay within the boundaries and guidelines of what the statute reads and what the

case law reads.

One, there could not have been a consecutive sentence ordered by Judge Pezman at the time the sentence was imposed for the state charges to be running consecutive to that of the federal.

The reason being the federal charges were not imposed at that time, and the case law says you cannot make the sentences consecutive to an indeterminate amount, and since the sentence was not determined by the federal courts, it could not be determined at that time to be consecutive.

The question here is under subparagraph (b), and actually the statute says: The court shall not impose a consecutive sentence, except, and it goes on, the thing that it specifically states in the last few lines is if the court determines that such a term, being a consecutive term, is [']required to protect the public from further criminal conduct by the defendant, and the basis for which the court shall set forth in the record.[']  [Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-4(b).]

It is not a question of whether or not we also need to make sure we need to punish him more or in furtherance of his actions with the victim.  The question is, do we believe

Mr. Flaugher, if released, or if the sentence were concurrent and that resulted in him ultimately being released, does this court believe that it is necessary to make it consecutive because he is going to go out and, basically, commit further crimes in the community.

There is nothing here to show that he is going to throw away his last opportunity to make what little life he has left to do.  He has sat there for 17 years, and I don't want to argue my point.  That's the basis or that's the statute and that's the guidelines for which we are here for."

The June 2008 amended judgment and sentence may have led to the confusion whether the trial court ordered the two state sentences to run concurrently to each other.  The clerk typed in "concurrent" after count I and count II but did not fill in the blank to indicate concurrent to what sentence.

| "COUNT | DATE OF OFFENSE | STATUTORY OFFENSE | CITATION | CLASS | SENTENCE | MSR |
|---|---|---|---|---|---|---|
| I | 07/08/90 | attempt (First Degree Murder) | Chp 38-Sec. 8-4(a) | X | 15 Yrs. ____ Mos. | ____ Yr. |

and said sentence shall run ([XX] concurrent with) ([ ] consecutive to) the sentence imposed on: _____.

| COUNT | DATE OF OFFENSE | STATUTORY OFFENSE | CITATION | CLASS | SENTENCE | MSR |
|---|---|---|---|---|---|---|
| II | 07/08/90 | attempt (First Degree Murder) | Chp 38-Sec. 8-4(a) | X | 15 Yrs. ____ Mos. | ____ Yr. |

and said sentence shall run ([X] concurrent with) ([ ] consecutive to) the sentence

imposed on: _____."

However, the trial court clearly gave credit for the time served in federal custody.

"[X] The [c]ourt finds that the defendant is entitled to
receive credit for time actually served in custody from
05/30/91 [specify date(s)] to 06/24/2008 from _____ to
_____ from _____ to _____."

Further, the trial court clearly ordered the state sentences on count I and count II to be concurrent with, not consecutive to, the federal case.

"[X] IT IS FURTHER ORDERED that the sentence(s)
imposed on count(s) I & II be ([X] concurrent with) ([ ]
consecutive to) the [f]ederal [c]ase sentences imposed in
case [No.] 90-30089-02WLB in the 7th District Federal
Court in Illinois."

Indeed, the trial court recognized that Judge Pezman would not have run the state and federal charges concurrently if the matter had been brought to his attention within 30 days of the federal sentencing pursuant to section 5-8-4(a) as opposed to 17 years later--at the date of the hearing herein.

"THE COURT:

* * *

I note with interest that in reading the case law as this
statute currently exists, I would note that the provision,

- 29 -

paragraph (b), has not been substantially changed, in fact, I don't believe changed at all in the interim, but the case law that is there, I did read case law which would suggest that previous, previous to the 1991 statute in effect, that at some point this was required that the defendant bring within 30 days of the imposition of the federal sentence this matter to the circuit court's attention for a determination as to whether it should be consecutive or concurrent. That's no longer there. I don't see that as an issue. I only use that as an example in this, Mr. Flaugher.

I suspect, don't know, obviously never talked with Judge Pezman about this, didn't know to talk about it and wouldn't have talked with him, and he wouldn't have talked with me, but I suspect that the outcome of this could well have been substantially different had 30 days after your federal sentence was imposed, would have been substantially different than what it is going to be today."

Had Judge Greenlief intended to make the two state consecutive sentences concurrent, he would not have attached the consecutive sentence mittimus of Judge Pezman to his amended order which he sent to the Department of Corrections (DOC).

"THE COURT: My only concern in doing what you are suggesting, Mr. Burch, what I would be tempted to do is to

attach Judge Pezman's, and show that this is--and I'm not

sure of the term, an update, if you will, of that mittimus,

attach Judge Pezman's mittimus, put a new one on because

of the requirements that [DOC] [has] currently, which, quite

frankly, Judge Pezman's mittimus may not meet in that

respect.

I will sign an updated mittimus in that respect to

reflect credit for time served, reflect that it is to be a concur-

rent sentence, and I would hope to do that in an attempt to

confuse, in fact, to clarify for [DOC] what we are intending,

although it's entirely possible that there may be confusion

that results from that."

Concededly, the parties and the trial court applied section 5-8-4(b) of the

Unified Code, the statutory provision for state consecutive sentences. The statute does

not specifically indicate under reconsideration upon release from federal custody what

factors the trial court should consider on resentencing. But that provision does prohibit

imposition of consecutive sentences without consideration of the offense, the defen-

dant's character, and the need for the protection of the public.

"The court shall not impose a consecutive sentence

except as provided for in subsection (a) unless, having re-

gard to the nature and circumstances of the offense and the

history and character of the defendant, it is of the opinion

that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-4(b).

In essence here, Judge Greenlief was deciding whether to credit the state consecutive sentences with the federal time. Even defendant's counsel in oral argument conceded he did not ask nor did the trial court run the state court sentences concurrently to each other, only concurrently to the federal sentence.

## B. However, the Trial Court Had Jurisdiction To Reduce the State Sentences Under the Unified Code, the Revestment Doctrine, or Because the Sentencing Judgment Was Stayed

The trial court had jurisdiction to order the state consecutive attempt (first degree murder) charges to run concurrently to the federal sentence under section 5-8-1(f) of the Unified Code, which provides as follows:

"A defendant who has a previous and unexpired sentence of imprisonment imposed by an Illinois circuit court for a crime in this [s]tate and who is subsequently sentenced to a term of imprisonment by another state or by any district court of the United States and who has served a term of imprisonment imposed by the other state or district court of the United States, and must return to serve the unexpired prior sentence imposed by the Illinois Circuit Court[,] may apply to the court which imposed sentence to

have his sentence reduced.

> The circuit court may order that any time served on the sentence imposed by the other state or district court of the United States be credited on his Illinois sentence. Such application for reduction of a sentence under this subsection (f) shall be made within 30 days after the defendant has completed the sentence imposed by the other state or district court of the United States." (Emphases added.) 730 ILCS 5/5-8-1(f) (West 2006).

See also Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-1(f); Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-1(f).

When construing a statute, the court's primary consideration is to determine and give effect to the legislature's intent. People v. Skillom, 361 Ill. App. 3d 901, 906, 838 N.E.2d 117, 122 (2005). A court must consider the statute in its entirety. People v. Davis, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002). "The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition." Davis, 199 Ill. 2d at 135, 766 N.E.2d at 644.

However, courts should also consider "the 'reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.'" People v. Parker, 123 Ill. 2d 204, 209, 526 N.E.2d 135, 137 (1988), quoting People v. Haywood, 118 Ill. 2d 263, 271, 515 N.E.2d 45, 49 (1987). Further, "if the intent and purpose of the

legislature can be determined from a statute, 'words may be modified, altered, or even supplied so as to obviate any repugnancy or inconsistency with the legislative intention.'" Parker, 123 Ill. 2d at 210-11, 526 N.E.2d at 138, quoting People v. Bratcher, 63 Ill. 2d 534, 543, 349 N.E.2d 31, 35 (1976). Finally, "[w]hile penal statutes are to be strictly construed in favor of an accused, they must not be construed so rigidly as to defeat the intent of the legislature." Parker, 123 Ill. 2d at 213, 526 N.E.2d at 139. "[W]e are not bound by the literal language of a statute if that language produces absurd or unjust results not contemplated by the legislature." In re Donald A.G., 221 Ill. 2d 234, 246, 850 N.E.2d 172, 179 (2006). Here, the statute provides that the trial court can reduce the defendant's sentence. This makes sense, given that after the federal sentence has been served, the state court has additional factors it can consider in sentencing: whether the federal trial court sentenced defendant to a lengthier sentence due to the state conviction, defendant's behavior while imprisoned, etc.

Moreover, the revestment doctrine may apply here to give the trial court jurisdiction to reconsider the state sentences. "A trial court loses jurisdiction to vacate or modify its judgment 30 days after entry of judgment unless a timely postjudgment motion is filed." People v. Minniti, 373 Ill. App. 3d 55, 65, 867 N.E.2d 1237, 1246 (2007). In some instances, the parties may "revest a court that has general jurisdiction over the matter with both personal and subject[-]matter jurisdiction over the particular cause after the 30-day period following final judgment." Minniti, 373 Ill. App. 3d at 65, 867 N.E.2d at 1246. The revestment doctrine has only been "applied where the circuit court loses jurisdiction over a matter because of the passage of time after a judgment."

Wierzbicki v. Gleason, 388 Ill. App. 3d 921, 928, 906 N.E.2d 7, 15 (2009) (refusing to apply the revestment doctrine outside the situation where a trial court loses jurisdiction because of the expiration of 30 days after judgment; the appellate court rejected the defendant's argument that the revestment doctrine made an order entered after the notice of appeal was filed valid when the appeal was dismissed). Here, defendant's motion for a declaratory judgment (which the trial court essentially treated as a motion to reconsider sentence) was an untimely postjudgment motion.

Under the revestment doctrine, the parties can revest a court with jurisdiction so long as (1) the court has general jurisdiction over the matter, (2) the parties actively participate without objection, and (3) the proceedings are inconsistent with the merits of the prior judgment. Minniti, 373 Ill. App. 3d at 65, 867 N.E.2d at 1246 (applying the revestment doctrine where the defendant filed an untimely postjudgment motion but the State appeared at the hearing and failed to object to the untimeliness of the motion; due to revestment, the notice of appeal filed within 30 days of the ruling on the untimely postjudgment motion vested the appellate court with jurisdiction); see also People v. Price, 364 Ill. App. 3d 543, 546, 846 N.E.2d 1003, 1006 (2006) (noting the rationale "is that the trial court considers the benefitting party to have ignored the judgment and started to retry the case [citation], the benefitting party by its conduct consents to have the prior ruling set aside [citation], or that the benefitting party by its conduct waives the right to question the jurisdiction of the court [citation]").

The revestment-doctrine factors are present here. The trial court had

general jurisdiction over the matter. The parties actively participated in the hearing. In fact, the State called the two victims to testify on the issue of whether consecutive terms were required to protect the public. By participating and not objecting to the hearing, the prosecutor essentially acknowledged that the prior sentencing judgment should be revisited. See Minniti, 373 Ill. App. 3d at 67, 867 N.E.2d at 1248, citing People v. Gargani, 371 Ill. App. 3d 729, 732, 863 N.E.2d 762, 766 (2007) (finding the trial court was revested with jurisdiction to hear an untimely posttrial motion where the State actively participated in the hearing without objecting to the untimeliness of the motion). Therefore, the parties revested the trial court with jurisdiction to reconsider the state sentences imposed.

Alternatively, if the trial court had the authority to stay the sentencing judgment and the length of the stay did not deprive the court of jurisdiction, the trial court retained jurisdiction here.

"When a person accused of a crime has been convicted, sentenced[,] and delivered into the custody of the proper officer of the penitentiary under a mittimus, the court rendering the judgment and imposing the sentence loses jurisdiction over the case and is without power to vacate, set aside[,] or modify the judgment[] (People v. Putnam, 398 Ill. 421[, 76 N.E.2d 183 (1947)]; People v. Hamel, 392 Ill. 415, [64 N.E.2d 865 (1946)])[,] and the filing of a motion to vacate does not have the effect of staying the mittimus even

though the motion is filed before the defendant is delivered to the penitentiary. (People ex rel. Swanson v. Williams, 352 Ill. 227[, 185 N.E. 598 (1933)].) In this case, as in Swanson, no motion for a stay of mittimus was filed and defendant was delivered to the penitentiary while the mittimus was in full force and effect. The judgment having been executed, the trial court was without power to set it aside and an order to that effect would have been a nullity." People v. Wakeland, 15 Ill. 2d 265, 269, 154 N.E.2d 245, 248 (1958).

Here, the judgment was never executed. Therefore, the trial court had jurisdiction to reconsider the sentence. At the very least, this court should remand for the trial court to determine whether the state sentences should be reduced.

### C. Trial Court Had the Authority To Make the State Sentences Concurrent to the Federal Sentences

In 1991, the trial court made no mention about whether the state sentences would be served concurrently or consecutively to the federal sentence that had not yet been imposed. Such an order would have been improper. See People ex rel. Middleton v. MacDonald, 85 Ill. App. 3d 982, 984, 407 N.E.2d 775, 776-77 (1980). In 2008, the court ordered that defendant receive credit on his state consecutive sentences for the time served in the federal penitentiary. The new sentencing judgment provided that the state court sentences were to run concurrently with the federal sentence. Although no one cited the statute to the court, section 5-8-1(f) of the Unified Code provides that a circuit court may reduce a defendant's sentence and order that any time served on the

sentence imposed by the federal court be credited to the Illinois sentence. See 730 ILCS 5/5-8-1(f) (West 2008); Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-1(f); Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-1(f).

### 1. State and Federal Sentences Are Presumed To Run Consecutively but a Defendant Can Petition for Concurrent Sentences

Unless stated otherwise by the trial court, two or more sentences to the Illinois penitentiary are presumed to run concurrently. People v. Boney, 128 Ill. App. 2d 170, 174, 262 N.E.2d 766, 768 (1970). In contrast, when one sentence is to a federal penitentiary and one is to an Illinois penitentiary, the sentences are presumed to run consecutively unless otherwise specified in the court's order. Boney, 128 Ill. App. 2d at 174, 262 N.E.2d at 768; see also Thomas v. Greer, 143 Ill. 2d 271, 275, 573 N.E.2d 814, 815 (1991); People ex rel. Hesley v. Ragen, 396 Ill. 554, 562, 72 N.E.2d 311, 314 (1947) ("sentences of imprisonment to different places of confinement do not run concurrently"). Because the court's order here did not and could not specify the state sentences as consecutive to the yet-to-be imposed federal sentence, the state sentences were presumed to run consecutively to the federal sentence.

Nonetheless, a defendant can petition the state trial court for an order that the state sentences run concurrently with the federal sentence. Section 5-8-4(a) of the Unified Code provides that upon imposition of the later-imposed federal sentence, the defendant may ask the state court within 30 days of federal sentencing to order the sentences to run concurrently. Section 5-8-4(a) of the Unified Code provides as follows:

"When a term of imprisonment is imposed on a defendant by an Illinois circuit court and the defendant is subsequently

- 38 -

sentenced to a term of imprisonment by another state or by a

district court of the United States, the Illinois circuit court

which imposed the sentence may order that the Illinois

sentence be made concurrent with the sentence imposed by

the other state or district court of the United States. The

defendant must apply to the circuit court within 30 days

after the defendant's sentence imposed by the other state or

district of the United States is finalized." 730 ILCS 5/5-8-

4(a) (West 2006).

See also Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-4(a). Again, the trial court in 2008

noted the language about applying within 30 days for a concurrent sentence but stated:

"I did read case law which would suggest that previous,

previous to the 1991 statute in effect, that at some point this

was required that the defendant bring within 30 days of the

imposition of the federal sentence this matter to the circuit

court's attention for a determination as to whether it should

be consecutive or concurrent. That's no longer there. I don't

see that as an issue. I only use that as an example in this,

[defendant]."

That language is still there, so apparently the court was referring to the language in

section 5-8-4(a) and indicating that option (applying within 30 days of sentencing) was

no longer at issue. In any event, defendant did not apply for a concurrent sentence

- 39 -

within 30 days of his federal sentencing as required by section 5-8-4(a), but he did timely apply under section 5-8-1(f).

Section 5-8-1(f) of the Unified Code allows a defendant to apply for a reduction in sentence within 30 days after the defendant has completed the sentence imposed by the other state or district court of the United States. See 730 ILCS 5/5-8-1(f) (West 2006); see also Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-1(f); Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-1(f). Section 5-8-1(f) also provides that the circuit court may order that any time served on the sentence imposed by the other jurisdiction be credited to the defendant's Illinois sentence. See 730 ILCS 5/5-8-1(f) (West 2006); see also Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-1(f); Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-1(f).

However, the situation in this case is further complicated by the mandatory-consecutive-sentencing provision in section 5-8-4(h) of the Unified Code, which provides as follows:

"If a person charged with a felony commits a separate felony while on pre[]trial release or in pretrial detention in a county jail facility or county detention facility, the sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered." 730 ILCS 5/5-8-4(h) (West 2006).

See also Ill. Rev. Stat. 1991, ch. 38, par. 1005-8-4(h). This provision is mandatory. People v. Aleman, 355 Ill. App. 3d 619, 624, 823 N.E.2d 1136, 1141 (2005).

In this case, the record supports a finding defendant committed a federal offense while on pretrial release. At trial, defendant admitted the federal offense occurred while he was on bond in the Calhoun County case. "A court of review may consider and rely upon entries in the common[-]law record when examining the propriety of consecutive sentences." People v. Ellis, 241 Ill. App. 3d 1034, 1042, 609 N.E.2d 967, 973 (1993) (finding that the record established that the defendant committed one offense while on pretrial release for another).

Did the trial court, by giving defendant credit on his Illinois sentence for the time served in the federal penitentiary, essentially circumvent the mandatory-consecutive-sentencing provision in section 5-8-4(h) of the Unified Code? I would find that it did not.

Section 5-8-4 of the Unified Code decrees how consecutive and concurrent sentences shall be served. 730 ILCS 5/5-8-4 (West 2006). Sections 5-8-4(a) and (b) of the Unified Code direct the trial court when it can sentence defendants to concurrent or consecutive sentences. 730 ILCS 5/5-8-4(a), (b) (West 2006). Section 5-8-4(h) of the Unified Code mandates that sentences be served consecutively when one of the felonies is committed on pretrial release. 730 ILCS 5/5-8-4(h) (West 2006).

Sections 5-8-1(e) and (f) of the Unified Code, on the other hand, are not original sentencing provisions but rather address a reconsideration of inmates' sentences who have served a sentence in a federal facility or another state and are returned to Illinois for service of an Illinois sentence. 730 ILCS 5/5-8-1(e), (f) (West 2006). These provisions grant the trial court jurisdiction to revisit defendant's Illinois sentence

and determine whether the Illinois sentence should be credited with time served in the other jurisdiction.

Defendant here timely applied to the trial court and requested his Illinois sentence run concurrently to his federal sentence. The court granted that request after extensive evidence and deliberation. Such was not an abuse of discretion.

Further, the State erroneously relies on Greer, 143 Ill. 2d 271, 573 N.E.2d 814, for the proposition that the federal and state convictions must be served consecutively. There, the circuit court was required to order the escape sentence to run consecutively to the crime for which the defendant was detained. However, Greer does not address section 5-8-1(e) or section 5-8-1(f), which permit the trial court to order the federal and state sentences to run concurrently, no doubt because Greer's multiple sentences were imposed in 1978, at a time when the statute which revests the court with jurisdiction to award credit for federal time served addressed only other states' convictions and not other federal convictions:

"A defendant who has a previous and unexpired sentence of imprisonment imposed by another state[,] and who after sentence for a crime in Illinois must return to service the unexpired prior sentence[,] may have his sentence by the Illinois court ordered to be concurrent with the prior sentence in the other state[,] and the court may order that any time served on the unexpired portion of the sentence in the other state prior to his return to Illinois shall be

credited on his Illinois sentence. The other state shall be furnished with a copy of the order imposing sentence[,] which order shall provide that when the offender is released from confinement of the other state, whether by parole or by termination of sentence, the offender shall be transferred to [DOC]. The court shall cause [DOC] to be notified of such sentence at the time of commitment and to be provided with copies of all records regarding the sentence." Ill. Rev. Stat. 1977, ch. 38, par. 1005-8-1(f).

More troubling, however, is the language in People v. Clark, 183 Ill. 2d 261, 266, 700 N.E.2d 1039, 1042 (1998), which states as follows:

"Indeed, this court in [People v.] Wilson[, 181 Ill. 2d 409, 692 N.E.2d 1107 (1998),] held that it was error for the circuit court to impose a concurrent sentence because, under the statute, the circuit court lacked the authority to impose any sentence other than a consecutive sentence. Wilson, 181 Ill. 2d at 411-12[, 692 N.E.2d at 1108]. Like the defendant in Wilson, defendant here committed the other felonies while he was out on bond from the original felony with which he was charged. For this reason, the circuit court lacked the authority to impose the agreed-upon six-year term as a concurrent sentence."

The supreme court does not address whether the trial court in <u>Clark</u> could have ordered those sentences to run concurrently if a timely petition had been filed under section 5-8-4(a) or later under section 5-8-1(e) or (f). Further, the court does not indicate when the defendant was sentenced in Missouri. "While on [pretrial] release, however, [the] defendant committed other felonies in the State of Missouri and ultimately received a four-year term of imprisonment there." <u>Clark</u>, 183 Ill. 2d at 263, 700 N.E.2d at 1040. The trial court here did have the authority to order credit for the federal time on the state sentences. Under either section 5-8-4(a) or section 5-8-1(e) or (f) of the Unified Code, a court has the authority to order an otherwise mandatory consecutive sentence to run concurrently for a defendant to receive credit for time served on the other sentence.

Further, I question the wisdom behind reading section 5-8-4(h) of the Unified Code as mandatory in all circumstances. Of note, the legislature recently amended the Unified Code, including sections 5-8-1(a) and (f) and section 5-8-4(a). While recognizing the supreme court's admonition to proceed cautiously when gleaning the intent of one legislature as reflective of another's, nonetheless, the recent clarifications are enlightening here.

> "Does not make any substantive changes, but--recodifies them and puts them in a different order. And it does codify some Illinois Supreme Court decisions that control the implementation and the effect of these provisions. The purpose is to make the sentencing provisions easier for

judges and attorneys and--to understand and to reduce the number of resentencing hearings caused by improper dispositions. ***

* * *

*** It's a very significant change, but yet at the same time, there's no substantive provisions. But it's important because now it'll be much easier for all the judges and the attorneys to deal with [the] Criminal Code to understand the--the sentencing provisions. It's been very convoluted, hard to follow. It's resulted in resentencing hearings." 95th Ill. Gen. Assem., Senate Proceedings, May 24, 2007, at 15-16 (statements of Senator Cullerton).
"One of the things that they've found over the years is that in regards to sentencing that if you want to see what sentence you should to [sic] apply to a defendant if, in fact, he's been found guilty, it takes you three to four hours going through the chapter books to determine what particular sentence should be implemented. The CLEAR Commission, in fact, took a look at the... the ... all of the sentencing laws and now have put that in a standard framework where you can go to one section in the statute and be able to look at the sentences as necessary based on the crime committed. And that's the

essence of what Senate Bill 100 does. *** Basically, and as I said earlier, all this does is codify the sentencing [c]ode so that we can go to one section in the Criminal Code and be able to determine what sentence should be given for the particular crime committed.

* * *

*** So, this organizes it so that a prosecutor and... or a public defender can look at one part of the sentencing procedure and make sense of it. ***

* * *

*** This is strictly just a reorganization Bill that's going to help the practitioners, not only the court, the judges, but also the prosecutors, the public defenders[,] and private attorneys who are defense counsel. ***

* * *

*** [A] good first step in terms of trying to adjust our Criminal Code here in this state." 95th Ill. Gen. Assem., House Proceedings, November 20, 2008, at 31-34 (statements of Representatives Turner, Lindner, and Durkin).

The provisions of section 5-8-4(a) (730 ILCS 5/5-8-4(a) (West 2006)) regarding federal/other state subsequent felony convictions have been moved to section 5-8-4(e). (Previously imposed federal/other state felony convictions must still run

concurrently.)  The new section is now entitled by the legislature "(e) CONSECUTIVE TERMS; SUBSEQUENT NON-ILLINOIS TERM."

"If an Illinois court has imposed a sentence of imprisonment on a defendant and the defendant is subsequently sentenced to a term of imprisonment by a court of another state or a federal court, then the Illinois sentence shall run consecutively to the sentence imposed by the court of the other state or the federal court.  That same Illinois court, however, may order that the Illinois sentence run concurrently with the sentence imposed by the court of the other state or the federal court, but only if the defendant applies to that same Illinois court within 30 days after the sentence imposed by the court of the other state or the federal court is finalized."  730 ILCS 5/5-8-4(e) (West 2008).

The statutory language here makes clear that the Illinois sentence shall run consecutively to a subsequent federal sentence <u>unless</u> the Illinois court orders they run concurrently.  (The provision for reconsideration of this issue upon release from federal custody has concededly been stricken.  However, defendant may select which sentencing statute to proceed under and he has selected the former version.  See <u>People v. Hollins</u>, 51 Ill. 2d 68, 71, 280 N.E.2d 710, 712 (1972).)

This amendment did not change section 5-8-4(h) (730 ILCS 5/5-8-4(h) (West 2006)) regarding a felony committed while on bail but did move that provision to

subsection 5-8-4(d)(9) (730 ILCS 5/5-8-4(d)(9) (West 2008)) entitled "CONSECUTIVE

TERMS; MANDATORY."  These changes indicate that the previous language about a

subsequently committed felony while out on bond refers only to a state court felony--

not a federal offense as here.  Section 5-8-4(e) (730 ILCS 5/5-8-4(e) (West 2008)),

"CONSECUTIVE TERMS; SUBSEQUENT NON-ILLINOIS TERM," again permits the

trial court to run those sentences concurrently.  Otherwise, the subsequent federal and

state court convictions run consecutively.

Still, recognizing the cautious use of legislative intent so gleaned, the

original statutory language expressed this very same intent.  First, the statutory scheme

set up in sections 5-8-1 and 5-8-4 of the Unified Code shows the legislature clearly

recognized the difference between state and federal convictions.  In fact, in light of

People ex rel.Middleton v. MacDonald, 85 Ill. App. 3d 982, 407 N.E.2d 775 (1980), the

legislature amended section 5-8-4 to grant Illinois state courts the authority to recon-

sider its sentence within 30 days of a subsequent federal or other state sentence.

Sections 5-8-1 and 5-8-4 of the Unified Code are very specific when

mentioning other state or federal offenses.  Nowhere is that language about "subsequent

federal or other states' sentence" used in section 5-8-4(h) of the Unified Code; only the

word "felony" is used.  The word "felony" does not include offenses committed in other

jurisdictions contrary to the implication of Clark and People v. Palmer, 204 Ill. App. 3d

878, 562 N.E.2d 375 (1990).

> "The [Unified] Code defines 'felony' as 'an offense for which
>
> a sentence to death or to a term of imprisonment in a peni-

- 48 -

tentiary for one year or more is provided.' (Ill. Rev. Stat.

1977, ch. 38, par. 2-7.) 'Offense' is defined as 'a violation of

any penal statute of this State.' (Emphasis added.) Ill. Rev.

Stat. 1977, ch. 38, par. 2-12." Palmer, 204 Ill. App. 3d at 880,

562 N.E.2d at 376.

The "felony" in section 5-8-4(h) of the Unified Code is not an offense committed in another state or federal court. Further, the trial court would not have had jurisdiction to run the federal or other state's sentence consecutively to the Illinois sentence. Only if defendant was kept in federal custody to serve his federal sentence before his previous Illinois sentence could a defendant be required to serve his Illinois sentence consecutively to his federal sentence. Had defendant been returned to state custody to serve his Illinois sentence before his federal sentence, the trial court would have no jurisdiction or authority to determine whether the federal sentence would run consecutively. Conversely, the Illinois court had no jurisdiction or authority to run the state court sentences consecutively to a federal sentence under section 5-8-4(h). This statute applies only to state court felony convictions committed while on state court pretrial release.

The legislature clearly delineated while on "pre[]trial release or in pretrial detention in a county jail facility, or county detention facility." (Emphases added.) 730 ILCS 5/5-8-4(h) (West 2006). In that same statute, the legislature clearly set forth that a state court judge may run a state sentence consecutively or concurrently to a sentence already imposed in another state or federal court. Here, defendant was sentenced in

state court on October 4, 1991, and in federal court on June 5, 1992, so that trial judge could impose neither a consecutive nor a concurrent sentence. Perhaps he stayed the sentencing judgment to clarify or decide how to run the sentences after the federal sentence was imposed.

Regardless, if the legislature, in drafting section 5-8-4(h), meant a felony in another state or the district court of the United States, the legislature was capable of and should have so stated.

Moreover, the application of the presumption of consecutive state to federal court sentences makes no sense where the defendant has yet to be sentenced to federal court.

For these reasons, I would affirm the trial court.